UNITED STATES of America, Appellee,

v.

ASSOCIATED MILK PRODUCERS,
INC., Appellee,

v.

ASSOCIATED RESERVE STANDBY
POOL COOPERATIVE, INC.,
Appellant.

UNITED STATES of America, Appellee,

v.

ASSOCIATED MILK PRODUCERS,
INC., Appellee,

v.

The NATIONAL FARMERS' ORGANI-
ZATION, Appellant.

Nos. 75–1452 and 75–1473.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1975.

Decided April 16, 1976.

As Amended on Denial of Rehearing
May 19, 1976.

**114**

Melville C. Williams and Kael B. Kennedy, Chicago, Ill., and David R. Hardy and John C. Monica, Kansas City, Mo., on brief, for appellant.

Thomas E. Kauper, Asst. Atty. Gen., Robert B. Nicholson, Laurence K. Gustafson, Catherine G. O'Sullivan, Carl D. Lawson and Lee I. Weintraub, Attys., Dept. of Justice, Washington, D. C., on brief, for appellee, United States.

Sidney Harris, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., and Colvin A. Peterson, Jr., Kansas City, Mo., on brief, for appellee, Associated Milk Producers, Inc.

Worth Rowley, Richard A. Green, Aaron B. Kahn and Patrick F. Martin, Rowley & Scott, Washington, D. C., and William H. Sanders, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for the National Farmers' Organization.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

The National Farmers' Organization (NFO) and the Associated Reserve Standby Pool Cooperative, Inc. (ARSPC), have filed separate appeals from denial of their motions to intervene in a civil antitrust suit brought by the United States against the Associated Milk Producers, Inc. (AMPI), *United States v. Associated Milk Producers, Inc.*, 394 F.Supp. 29 (W.D.Mo.1975). We have consolidated these appeals for purposes of this opinion. We affirm the district court's denial of intervention in each case.

AMPI, the defendant in the government case as well as in several private treble-damage suits, is a dairymen's cooperative marketing organization with about 40,000 members in 14 midwestern states. In the government's suit AMPI is charged with monopolization and attempted monopolization of milk marketing.

ARSPC, one of the appellants, is a federation of 17 dairy cooperatives, among which the defendant AMPI is the largest. ARSPC's function is to equalize supplies and prices of milk in all sections of the nation east of the Rocky Mountains by taking options from producers with excess milk and transferring the milk to other areas where supplies are low.

NFO is a nationwide organization of farmers which markets many of the products of its members. It markets milk in competition with AMPI. NFO has a private treble-damage antitrust suit pending against AMPI in which NFO alleges injury from some of the antitrust violations charged in the government suit.

The government's case was filed in February, 1972. After several years of discovery, the government and AMPI commenced settlement negotiations, and on August 13, 1974, the parties submitted a proposed consent decree to the district court. Thereafter, the district court set up a detailed schedule for submission of questions and objections by third parties such as NFO and ARSPC. The district court directed all interested persons to file appropriate motions in October, 1974, including motions seeking leave to intervene or to appear as *amicus curiae.*

Both NFO and ARSPC filed written objections to the proposed consent decree.

NFO then made a timely motion to intervene as of right and opposed the decree on the ground that the relief granted the government was not sufficient to remedy the effects of past illegal conduct by AMPI.[1]  ARSPC, on the other hand, entered an appearance as *amicus curiae* only and objected to the proposed decree.  Counsel for ARSPC stated: "[W]e filed intentionally as *amicus* rather than seeking to intervene under Rule 24 because of the posture of the government with respect to our client. . . ."  Transcript of Nov. 14, 1974, hearing.  Thereafter, ARSPC was allowed to state its objections, propose an alternative version of the challenged provisions, and question the government on why it insisted on the version it did.

On April 30, 1975, the district court approved the proposed decree, finding it to be in the public interest and within the discretion of the Attorney General.  In the same opinion, the district court indicated it would deny NFO's motion to intervene.  394 F.Supp. at 42–44.

Twelve days after the district court had approved the decree, ARSPC moved to intervene as of right and to modify the decree in accord with ARSPC's prior objections.  The district court denied ARSPC's motion in an unreported memorandum opinion.

*The ARSP Motion to Intervene—No. 75–1452.*

The district court denied ARSPC's postjudgment motion to intervene as *untimely,* noting that intervention after entry of judgment should be permitted only in rare instances, such as where the applicant was unaware until that time that its interests might be affected.  Further, the district court reiterated the statement from its April 30, 1975, opinion that in any event it was satisfied that the government had sound reasons for insisting on its version of the decree rather than ARSPC's version.

*Timeliness.*

■ Rule 24's first requirement is that a motion to intervene be "timely."[2]  "Timeliness" under Rule 24 is a matter committed to the discretion of the trial court, and that court's determination can be reversed only if it is an abuse of discretion.  *NAACP v.*

---

1.  The NFO also urged that the court had failed to comply with the Antitrust Procedures and Penalties Act (APPA), Pub.L. 93–528, 88 Stat. 1706 which Congress enacted in December, 1974.  The APPA regulates the consent decree approval process with a view to enabling third parties to examine the decree and express their views on whether it serves the public interest.  The Act sets out several requirements, among them the § 2(g) requirement that the defendant in a government case file a description of all written and oral communications relevant to the proposed decree which were made by or on behalf of the defendant to any officer or employee of the government, except those between counsel of record and the Justice Department.

   Since the district court had not yet approved the decree when the APPA became effective, the court asked the parties and others to brief the question of whether and to what extent the Act would apply to this case.  There was considerable difference of opinion on that matter, but the district court determined that in any event there had been substantial compliance with all requirements of the Act except that AMPI had not made the § 2(g) report on communications.  The district court ordered AMPI to file such a report.  AMPI made two such

filings and the Justice Department reported additional conversations.  NFO objected that the reports were incomplete and requested an evidentiary hearing to prove, via the Senate Watergate Report, that there were additional communications.

2.  Rule 24 provides, in pertinent part:

   (a) *Intervention of Right.*  Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
   (b) *Permissive Intervention.*  Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.  Fed.R.Civ.P. 24.

*New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 662 (1973); *Iowa State Univ. Research Foundation, Inc. v. Honeywell, Inc.*, 459 F.2d 447, 449 (8th Cir. 1972).

■ The general rule is that motions for intervention made *after* entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner. *See United States v. Western Electric Co.*, 1968 Trade Cases ¶ 72,415 (D.N.J.), *aff'd sub nom., Clark Walter & Sons, Inc. v. United States*, 392 U.S. 659, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968); *United States v. Blue Chip Stamp Co.*, 272 F.Supp. 432, 435–38 (C.D.Cal.1967), *aff'd sub nom., Thrifty Shoppers Scrip Co. v. United States*, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968). In these government antitrust suits intervention was denied where the motions were filed after final approval of a consent decree. In *Blue Chip*, the situation was much like that at bar, for the would-be intervenors had previously participated as *amicus*. The court said:

> Each petitioner claims it demonstrated its opposition to the decree by filing an *amicus curiae* brief and by arguing in opposition to its entry. However, if petitioners had time to make known their opposition to the decree, they had time to file their applications to intervene.

272 F.Supp. at 435–36.

■ In the instant case, ARSPC has not advanced sufficient reasons for refusing to move for intervention in October, when the district court requested such motions, and

for waiting until the following May, after the decree was filed, to make its motion. ARSPC was at all relevant times aware that the decree contained the provision to which it objects. Further the district court stated that ARSPC never had any reason to believe that the court would refuse to approve the provision or that the government would change its mind.

The district court did not rely solely on the fact that the decree had already been entered in finding the motion untimely. It considered the opportunity of ARSPC to make its motion earlier, the excuse advanced for failing to do so and the opportunities ARSPC had already had to present its objections in written questions, to negotiate with AMPI and the government, and to take part in hearings before the court. On the basis of these factors, the district court held the motion untimely. We agree.

*The NFO Motion to Intervene—No. 75–1473.*

NFO claims that it was entitled to intervene as of right. It is not disputed that NFO's motion to intervene was timely. However, the district court held that NFO had failed to satisfy the other requisites of Fed.R.Civ.P. 24(a)(2).

NFO urges that the government is not adequately representing either the general public interest or the more specific interests of injured competitors in this suit, due to AMPI's alleged "political muscle" and illegal campaign contributions.[3] NFO asserts that it is a competitor of AMPI and has suffered due to AMPI's predatory practices.

---

3. A second interest which NFO has, though it does not so state, is an interest in blocking *any* consent decree in this case, thus forcing the government to go to trial. The consent decree, of course, is the equivalent of a *nolo contendere* plea and is inadmissible in other suits involving the same alleged antitrust violations, while a litigated judgment against AMPI in the government suit would be admissible in private actions as *prima facie* proof of liability. The cases unanimously hold that a private litigant's desire for that *prima facie* effect is not an interest entitling a private litigant to intervene in a government antitrust case. *See United States v. National Bank & Trust Co.*, 319

F.Supp. 930, 933 (E.D.Pa.1970); *United States v. Atlantic Richfield Co.*, 50 F.R.D. 369, 372 (S.D.N.Y.1970); *United States v. Automobile Mfgr's Ass'n*, 307 F.Supp. 617, 619–21 (C.D. Cal.1969), *aff'd*, 397 U.S. 248, 90 S.Ct. 1105, 25 L.Ed.2d 280 (1970); *United States v. Blue Chip Stamp Co.*, 272 F.Supp. 432, 438 (C.D.Cal. 1967). Further, in the analogous context of SEC enforcement proceedings, victims of the alleged fraud are not permitted to intervene in the SEC suit rather than file private actions merely because intervention would be less expensive. *SEC v. Everest Mgt. Corp.*, 475 F.2d 1236 (2nd Cir. 1972).

It asks that it be allowed to intervene to protect the public interest.

In denying NFO intervention, the district court relied primarily on the Supreme Court's decision in *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), which, under an earlier version of Rule 24(a), held that private parties were not entitled to intervene in government antitrust suits, since such parties would not be bound by the judgment and could bring their own suits for treble damages. 366 U.S. at 689, 81 S.Ct. at 1313, 6 L.Ed.2d at 609. While the present Rule 24 no longer requires that an applicant for intervention be bound by the judgment, the district court held that the appropriate standard for intervention in government antitrust cases is still that suggested by the Court in *Sam Fox*:

> [S]ound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . consent decree, *at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting.*

366 U.S. at 689, 81 S.Ct. at 1313, 6 L.Ed.2d at 609 (emphasis added).

NFO contends, however, that it need not show bad faith as under *Sam Fox*, and that mere failure to obtain all the relief which might be merited may be grounds for intervention and for setting aside a consent decree. NFO argues that only "nonfeasance" rather than "malfeasance" must be shown. This contention is based on NFO's reading of the Supreme Court's decision in *Cascade Natural Gas Corp. v. El Paso Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967).

In that litigation, the government sued El Paso to upset its merger with Pacific Northwest Pipeline Corporation. The district court did not require divestiture on the original hearing, but on appeal the Supreme Court ordered "divestiture without delay." *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). On remand, the district court held protracted hearings on the proposed decree, but denied petitions to intervene filed by the State of California and by several large users and distributors of natural gas who were to be customers of the new company to be formed by divestiture. The district court finally approved a decree negotiated by the government and El Paso.

On the second appeal, the Supreme Court found the decree wholly inadequate under that Court's prior mandate. The Court held that the petitioners should have been granted intervention to see that meaningful divestiture would occur.

As Mr. Justice Stewart pointed out in his dissent in *Cascade*, the majority opinion can be read to broaden greatly the persons entitled to intervene in government antitrust suits. 386 U.S. at 147–49, 87 S.Ct. at 942–44, 17 L.Ed.2d at 825–27. However, most post-*Cascade* cases have confined the case to its rather unique factual situation.[4] Certainly, the fact that the government had persuaded the district court to accept a decree which violated a prior Supreme Court mandate, plus the government's virtual abandonment of the relief originally requested, was a sufficient showing that the public interest was not being adequately represented in *Cascade*.

■ It is axiomatic that the Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest. Thus, in our view, the intervention standard remains that which was stated in *Sam Fox*: "[B]ad faith or malfeasance on the part of the Government" in negotiating and accepting a consent decree must be shown before intervention will be allowed. 366 U.S. at 689, 81 S.Ct. at 1313, 6 L.Ed.2d at 609.

---

4. For cases holding that *Cascade* is *sui generis*, and not to be read as an open invitation to intervention in government suits, *see, e. g., United States v. Paramount Pictures, Inc.*, 333 F.Supp. 1100, 1101, 14 F.R.Serv.2d 1390, 1391 (S.D.N.Y.1971), *aff'd sub nom., Syufy Enterprises v. United States*, 404 U.S. 802, 92 S.Ct. 79, 30 L.Ed.2d 37 (1972) (denying intervention in proceedings under consent decree to applicant who alleged government neglect of public interest); *United States v. Ciba Corp.*, 50 F.R.D. 507 (S.D.N.Y.1970); *United States v. Blue Chip Stamp Co.*, 272 F.Supp. 432, 438–39 (C.D.Cal.1967).

NFO does not question the integrity and good faith of the Justice Department trial staff who participated in the hearings on the consent decree in the district court. NFO does contend that unnamed high government officials may have influenced the subsequent consent decree proceedings to insure that AMPI received only a "slap on the wrist." The malfeasance or nonfeasance with which NFO is concerned goes back to the commencement of the case. NFO alleges, apparently, that AMPI influenced then Attorney General John Mitchell and his subordinates not to seek the relief which NFO wants the government to demand, specifically dissolution of AMPI or divestiture of certain processing plants and reformation of the membership contracts so that all dairy farmers in a region could resign *en masse.*

The record shows that NFO was allowed to submit voluminous information on these points and to question the government attorneys regarding the requested relief. The district court carefully considered the evidence and found that the government had acted in good faith and was adequately protecting the public interest by accepting the consent decree. 394 F.Supp. at 35–44.

█ We hold that the district court's decision on this issue is correct. First, this is not a case where the government has requested broad relief at the outset, represented to the court that nothing less would do, and then abruptly "knuckled under" as in *Cascade.* Second, the district court found that the government had good reason not to seek dissolution or divestiture of AMPI even though this is a monopoly case. AMPI's exemption under the Capper-Volstead Act[5] allows the joining together of dairy farmers for "processing, preparing for market, handling, and marketing" so long as they refrain from certain predatory prac-

tices. *Maryland & Virginia Milk Producers Ass'n, Inc. v. United States,* 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960). Thus, it was merely certain practices, and not the concert of action *per se* which the government sought to end. In addition, the government offered proof that not only was dissolution unnecessary, but that it would actually be contrary to the public interest. As for the membership contracts, the decree does require changes which will make it easier for members to withdraw from AMPI.[6]

█ The district court also considered whether the NFO should be granted permissive intervention under Rule 24(b). The NFO does have claims and defenses in its private suit that are common to those raised in the government case. Since, however, the district court decided to approve the consent degree rather than force the case to trial, no savings of time in the private suit would accrue from allowing NFO to participate fully as a party in the government's suit. Further, the district court found that the NFO did not want to pursue the common questions of law or fact in the government case but other matters which the court assessed as "either uncontroverted or clearly irrelevant," which would require lengthy evidentiary hearings. 394 F.Supp. at 34. Thus, we conclude that the denial of permissive intervention was not an abuse of discretion and cannot be disturbed by this court.

The respective orders of the district court denying leave to intervene do not constitute abuse of discretion and are AFFIRMED.

---

**5.** 7 U.S.C. § 291.

**6.** Under the decree, all AMPI members could quit in at most one year. The decree limits membership contracts to one year and sets cancellation periods to counter automatic renewals. It requires notice to all AMPI members of contract termination dates and methods

of withdrawal for each of the next three years. Further, to make withdrawal economically feasible, it requires AMPI to continue handling the milk of a member who has withdrawn on the same basis as for members in good standing for four months after withdrawal. 394 F.Supp. at 53.