577 P.2d 250

**In the Matter of ONE CESSNA 206 AIRCRAFT, FAA REGISTRY NO. N–72308, LICENSE NO. U–206–1361.**

**Richard C. SAATHOFF, Appellant,**

v.

**STATE of Arizona, Appellee.**

**No. 13175.**

Supreme Court of Arizona, In Division.

April 4, 1978.

Erlichman, Fagerberg & Margrave by Joseph Erlichman and Carla G. Ryan, Phoenix, for appellant.

Donald W. Harris, Former Maricopa County Atty., Charles F. Hyder, Maricopa County Atty., by Daniel F. McIlroy, Deputy County Atty., Phoenix, for appellee.

CAMERON, Chief Justice.

Richard C. Saathoff appeals from the trial court's denial of his motions to intervene and to set aside a default judgment forfeiting an airplane to the State because of the use of the airplane in the transportation of narcotics in violation of A.R.S. § 36–1041. We take jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

On 9 May 1975, one Cessna 206 aircraft was seized by authorities of the Federal Drug Enforcement Agency (DEA) following a two month surveillance. The aircraft was allegedly used to smuggle marijuana into the United States from Mexico. The plane was found abandoned and in a disabled condition at approximately 10:50 p. m. on 8 May 1975 on a flare-illuminated dirt airstrip approximately 25 miles southwest of Buckeye, Arizona, after radar had allegedly tracked its entry into and return from Mexico. A 1973 Chevrolet El Camino belonging to Saathoff was found with its hood up and inoperable some four miles from the aircraft. A 1974 Ford pickup belonging to Douglas Ralph Weston was found in a wash a short distance from the aircraft with approximately 750 pounds of marijuana in its bed. These two vehicles and the aircraft were impounded by the Maricopa County Sheriff's Office. Four days after this seizure, on 13 May 1975, Saathoff and three other suspects, Thomas Lange Sebring, Kelland Merlin Webb and Douglas Ralph Weston, were arrested and charged with the commission of federal narcotics offenses.

On 13 June 1975, 34 days after the plane was seized, the State initiated forfeiture proceedings. Notice was sent by certified mail to the registered owner of record of the aircraft, Dr. Merlin Webb, a Scottsdale dentist and father of one of the defendants in the federal prosecution, Kelland Merlin Webb. Dr. Webb informed authorities that he was no longer the owner of the aircraft, having sold it on 7 March 1975 through an attorney named Jack L. Phelps. When attorney Phelps was contacted, he refused to disclose the identity of the principal for

whom he had arranged the purchase of the aircraft. The State made no further attempt at notice in connection with the forfeiture action.

The State was unopposed at the forfeiture hearing held on 18 September 1975, and on 26 September 1975 default judgment was entered forfeiting the plane to the State. In December 1975, Saathoff was acquitted of the federal narcotics charges when the federal court granted a motion for directed verdict.

On 11 February 1976, Saathoff, labeling himself the real party in interest, filed a motion to set aside the default judgment pursuant to Rule 55(c), Rules of Civil Procedure, 16 A.R.S. This motion was denied on 24 February 1976 and on 5 May 1976 Saathoff's subsequent motion for a rehearing was denied by minute entry stating:

"IT IS ORDERED denying Motion for Rehearing for the reason that Respondent is not a proper party to this proceeding, not having been served with process nor having intervened prior to judgment; the proper remedy being independent action against State of Arizona."

Saathoff thereupon filed a motion to intervene, to set aside judgment and to set for trial. At the hearing, Saathoff's attorney indicated the reason Saathoff had not come forward to claim ownership of the airplane when notice was first given to Dr. Webb:

"I do think however, that the question of laches is important, and let me indicate this to the Court, that the seizure occurred on May 8, 1975. That was over a year ago.

"The judgment of acquittal was not entered until December 1 of 1975. Until that judgment of acquittal came down, Mr. Phelps would have been guilty of malpractice had he revealed, contrary to my specific instructions in behalf of my client, the true owner of the airplane, because there was a criminal case pending in Federal court.

"Mr. Phelps was acting under my specific instructions. When a matter is before the criminal courts, when Mr. Saathoff is charged with a Federal crime, any index of ownership that would have been revealed by Mr. Phelps may have tended to incriminate Mr. Saathoff."

On 17 June 1976, the trial court filed judgment denying both the motion to intervene and the motion to set aside judgment.

Saathoff appeals claiming that the court abused its discretion in not granting his motion to intervene and to set aside default judgment. Saathoff also claims on appeal that the forfeiture statute is unconstitutional. As to the constitutionality of the statute, this court has upheld the statute in *State ex rel. Berger v. McCarthy,* 113 Ariz. 161, 548 P.2d 1158 (1976) and we believe that case is dispositive of this issue.

■ As to the motion to intervene, we note that post-judgment motions to intervene are not per se untimely:

"The Arizona as well as the federal cases indicate that there are occasions where intervention is proper after judgment. *John F. Long Homes, Inc. v. Holohan,* 97 Ariz. 31, 396 P.2d 394 (1964); *Pellegrino v. Nesbit,* 9 Cir., 203 F.2d 463, 465, 37 A.L.R.2d 1296. See 2 Barron & Holtzoff, Federal Practice & Procedure, § 594, page 368. In the case of *Schuster v. Schuster,* 75 Ariz. 20, 251 P.2d 631 (1952), our Supreme Court held that a motion to intervene some *nine years after judgment* was proper and thus by implication timely, under the circumstances therein." *Liston v. Butler,* 4 Ariz.App. 460, 466, 421 P.2d 542, 548 (1967).

However, post-judgment motions to intervene are "ordinarily looked upon with a jaundiced eye." *McDonald v. E. J. Lavino Company,* 430 F.2d 1065, 1072 (5th Cir. 1970). And:

"* * * Intervention after judgment is unusual; it is granted only in very special circumstances. See J. Moore, 3B Federal Practice ¶ 24.3 (1974 ed.)." *Chase Manhattan Bk. (N.A.) v. Corporacion Hotelera,* 516 F.2d 1047, 1050 (1st Cir. 1975). "'Timeliness' under Rule 24 is a matter committed to the discretion of the trial court, and that court's determination can be reversed only if it is an abuse of discretion. (citations omitted)

"The general rule is that motions for intervention made *after* entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner. (citations omitted)" *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 115–16 (8th Cir. 1976).

■ We do not believe Saathoff has made a sufficiently "strong showing of entitlement" or of "justification for failure to request intervention sooner." Accordingly, we find that the trial court did not abuse its discretion in denying the motion to intervene. *Lincoln-Mercury-Phoenix v. Base,* 84 Ariz. 9, 322 P.2d 891 (1958); *Wilson v. Harris,* 227 Ark. 808, 302 S.W.2d 86 (Ark.1957).

This leaves only the question of whether the trial court abused its discretion in refusing to set aside the default and the judgment.

Rule 55(c) of the Rules of Civil Procedure, 16 A.R.S., reads:

"55(c) *Setting aside default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(c)."

Rule 60(c) provides:

"60(c) *Mistake; inadvertence; surprise; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(d); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. * * *" Rule 60(c), Rules of Civil Procedure, 16 A.R.S.

It is Saathoff's contention that the judgment was void because (1) the forfeiture proceedings were not timely instituted and (2) the State failed to give proper notice to him.

## TIMELINESS OF THE FORFEITURE PROCEEDINGS

■ The aircraft in this case was seized on 8 May 1975, 34 days later forfeiture proceedings were instituted. Judgment was on 24 September 1975. On 19 April 1976, almost a year after the seizure and 10 months after forfeiture proceedings were instituted, this court, in the case of *State ex rel. Berger v. McCarthy,* supra, stated:

"* * * In light of the several factors involved, allowing the law enforcement agency 20 days in which to file its Notice of Seizure and Intention to Institute Forfeiture Proceedings is reasonable. This decision appears to be fair to both parties as it places them in an equal position before the bar.

\* \* \* \* \* \*

"* * * We have today construed A.R.S. § 36–1043 to mean that the law enforcement agencies must file their forfeiture proceeding within 20 days after the seizure of the vehicle in order to meet the reasonableness test. * * *" 113 Ariz. at 164, 548 P.2d at 1161.

Saathoff would have us apply *State ex rel. Berger v. McCarthy,* supra, retroactively and further hold that an untimely notice would void or at least make voidable the forfeiture proceeding. Were we to do so, we would cause havoc with titles in vehicles and aircraft purchased in reliance upon the interpretation of the statute as it existed prior to *McCarthy.* This we do not intend to do and we apply the statute prospectively only.

ADEQUATE NOTICE

■ Saathoff in his motion further contends that he was never served, that this also makes the judgment void. He contends that pursuant to (4) of Rule 60(c), supra, the trial court should have set aside the judgment.

Notice of the State's seizure and intention to institute forfeiture proceedings is required by statute as follows:

"A peace officer who seizes a vehicle under the provisions of this article shall file a notice of the seizure and intention to institute forfeiture proceedings with the county clerk of the county in which the seizure occurs, and the clerk shall serve notice thereof on all owners or claimants of the vehicle, by one of the following methods:

1. Upon an owner or claimant whose right, title or interest is of record in the division of motor vehicles, by mailing a copy of the notice by registered mail to the address on the records of the division.

2. Upon an owner or claimant whose name and address are known, by mailing a copy of the notice by registered mail to his last known address.

3. Upon an owner or claimant, whose address is unknown but who is believed to have an interest in the vehicle, by publication in one issue of a newspaper of general circulation in the county where the seizure occurred, or if there is no such newspaper, then by publication in a newspaper of general circulation in Maricopa county." A.R.S. § 36–1043 (1974).

Service was made on the record owner of the plane by certified mail. This was clearly in compliance with the requirements of A.R.S. § 36–1043(1). In addition, it met the constitutional standards for notice both in regard to the record owner and Saathoff. The United States Supreme Court has stated that

"[t]he reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected * * *." *Mullane v. Central Hanover Bank & Trust Co.*, 339

U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 874 (1950).

Obviously, Dr. Webb, the record owner received actual knowledge of the proceedings. But it is also true in situations such as this were the record owner disclaims any present interest in the property, that contacting the record owner may be the first step in reaching those who do have a present interest. It is then necessary to take any additional steps which are reasonable to inform those whom the record owner has indicated may have an interest. See *Mullane v. Central Hanover Bank & Trust Co.*, supra, and cf. *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). This, in fact, was done here. The State contacted the lawyer who had handled the transfer of the plane. Once the attorney, Mr. Phelps, said that he would not reveal the names of other principals in the sale, the State had exhausted any reasonable means of determining the identity of others whose interests might be affected. This contact with the attorney also satisfied the Mullane requirement that it be "reasonably certain" that those "affected" be "informed" by the chosen method of service.

But Saathoff contends that once the State learned that there were individuals other than the record owner who might claim an interest in the property, it was necessary to effect service at least by publication. A.R.S. § 36–1043(3). That provision is inapplicable in this case. Since the State in its investigation did not learn the identity of any other potential claimants it was impossible to effect service upon them by any means other than through service on the record owner. Service by publication would only have been required if the identity of any potential claimants had been revealed. Such person would then have fit the category of owner or claimant "whose address is unknown but who is believed to have an interest." There was no violation of the notice provision of A.R.S. § 36–1043.

Judgment and order of the trial court affirmed.

HAYS, and GORDON, JJ., concurring.