998 P.2d 1055

STATE of Arizona, ex rel., Janet NAPOLITANO, and Arizona Health Care Cost Containment System, Plaintiffs–Appellees.

v.

BROWN & WILLIAMSON TOBACCO CORP.; American Tobacco Company; Lorillard Tobacco Company Inc.; Philip Morris Inc.; R.J. Reynolds Tobacco Co.; United States Tobacco Company; British American Tobacco (Investments) Limited (fka British-American Tobacco Company Limited); Liggett & Meyers Inc., Defendants–Appellees.

State of Arizona, ex rel., Janet Napolitano, and Arizona Health Care Cost Containment System, Plaintiffs–Appellees,

v.

Apache County, Coconino County, Gila County, Graham County, Greenlee County, La Paz County, Maricopa County, Mohave County, Navajo County, Pinal County, Santa Cruz County, and Yuma County, political subdivisions of the State of Arizona, Intervenors-Appellants.

No. CV–99–0444–T/AP.

Supreme Court of Arizona, En Banc.

April 13, 2000.

Janet A. Napolitano, Attorney General By Janet A. Napolitano and Tom Prose, Phoenix, Attorneys for Plaintiffs–Appellees.

Hagens & Berman, P.S. By Steve W. Berman and Andrew M. Volk, Seattle WA, Attorneys for Plaintiffs–Appellees.

Hagens, Berman & Mitchell By Steven C. Mitchell, Phoenix, Attorneys for Plaintiffs–Appellees.

Steptoe & Johnson L.L.P. By Scot C. Stirling, Phoenix, Attorneys for Intervenors–Appellants.

Van O'Steen & Partners By Paul D. Friedman and Richard L. Green, Phoenix, Attorneys for Plaintiffs–Appellees.

Osborn Maledon, P.A. By William J. Maledon and Dawn L. Dauphine, Phoenix, Attorneys for Defendants–Appellees.

Richard M. Romley, Maricopa County Attorney By Cleon M. Duke, Phoenix, Sacks Tierney, P.A. By David C. Tierney, Scottsdale and Helm & Kyle, Ltd. By John D. Helm and Roberta S. Livesay, Tempe and Ryan, Woodrow & Rapp, P.L.C. By Ian A. Macpherson, Phoenix, Attorneys for Intervenors–Appellants.

## O P I N I O N

ZLAKET, Chief Justice.

¶ 1 We are asked to decide whether the trial court abused its discretion in denying a motion to intervene filed nearly two and one-half years after this litigation began, and fifteen days after a consent decree and final judgment were entered. We hold that it did not.

¶ 2 On August 20, 1996, the State of Arizona and the Arizona Health Care Cost Containment System (AHCCCS) ("the State") filed suit against the tobacco industry and its trade associations ("the tobacco companies") seeking damages as well as declaratory and injunctive relief. The State alleged, among other things, that the tobacco companies had conspired to mislead consumers about the adverse health effects of tobacco products. In late 1998, the State agreed to dismiss its lawsuit and join a global settlement agreement the tobacco companies had negotiated with forty-five other states. Under the agreement, Arizona would receive substantial injunctive relief and a $3.1 billion share of the total settlement. A consent decree and final judgment were entered against the tobacco companies on December 1, 1998. Fifteen days later, on December 16, 1998, a group of thirteen Arizona counties ("the Counties") sought to intervene in the lawsuit, claiming an interest in the settlement proceeds.

¶ 3 Under the terms of the Master Settlement Agreement (MSA), the tobacco companies agreed to compensate the State for expenses incurred by it and its political subdivisions as a result of tobacco-related illnesses.[1] However, they would make payment only to the State; the MSA provided no mechanism for apportioning shares of the settlement fund and distributing them to individual counties. Moreover, according to the language of the MSA, the State purported to release any past, present or future claims that its political subdivisions might have against the tobacco companies.[2] Fearing that their claims might barred by the MSA, and that the State would never pay them a fair share of the settlement, the Counties filed a motion to intervene pursuant to Rule 24 of the Arizona Rules of Civil Procedure.

¶ 4 The trial court denied the motion as untimely. It reasoned that to grant the motion "after the settlement has been negotiated and approved ... would cause delay, if not the unraveling of an historic settlement...." The Counties appealed and later filed a motion to transfer the case to this

---

1. Before the advent of AHCCCS in 1981, Arizona's fifteen counties paid for all indigent health care. Since 1982, Arizona counties have been responsible for about 32% of the state's Medicaid costs. Thus, the Counties claim a share of the settlement proceeds as compensation for their treatment of indigents with tobacco-related illnesses.

2. Although the Counties urge us to do so, we decline to reach the issue of whether the State was empowered to and did release their claims against the tobacco companies. The Attorney General, however, conceded at oral argument that the State had no such authority. Not surprisingly, the tobacco companies did not agree to be bound by that concession.

court. We granted the motion and now affirm.

¶5 Rule 24 of the Arizona Rules of Civil Procedure permits intervention in an action only "[u]pon timely application." In determining whether a motion is timely, the trial court must consider several factors, including the stage to which the lawsuit has progressed when intervention is sought and whether the applicant could have attempted to intervene earlier. *See State Farm Mut. Ins. Co. v. Paynter,* 118 Ariz. 470, 471, 577 P.2d 1089, 1090 (App.1978). The most important consideration, however, is whether the delay in moving for intervention will prejudice the existing parties in the case. *See Winner Enters., Ltd. v. Superior Court,* 159 Ariz. 106, 109, 765 P.2d 116, 119 (App.1988). Because granting a post-judgment motion to intervene is especially likely to prejudice the parties, such motions are disfavored, *see In re One Cessna 206 Aircraft, FAA Registry No. N-72308, License No. U-206-1361,* 118 Ariz. 399, 401, 577 P.2d 250, 252 (1978), and should be granted only in the most exceptional circumstances. *See Weaver v. Synthes, Ltd. (U.S.A.),* 162 Ariz. 442, 446, 784 P.2d 268, 272 (App.1989). We will not set aside the court's ruling on the timeliness of a motion to intervene absent a clear abuse of discretion. *See In re One Cessna 206 Aircraft,* 118 Ariz. at 402, 577 P.2d at 253; *William Z. v. Arizona Dep't of Econ. Sec.,* 192 Ariz. 385, 387, 965 P.2d 1224, 1226 (App. 1998).

¶6 In this case, we cannot say that the trial court abused its discretion. This lawsuit had been going on for nearly two and one-half years and had settled by the time the Counties sought to intervene. The fact that they waited so long should "weigh heavily against [them]." *County of Orange v. Air California,* 799 F.2d 535, 538 (9th Cir.1986) (holding that a motion to intervene made shortly after settlement was properly denied as untimely); *see also Aleut Corp. v. Tyonek Native Corp.,* 725 F.2d 527, 530 (9th Cir. 1984) (holding that a motion to intervene made on the eve of settlement was properly denied as untimely).

¶7 We agree that the prejudice to the State and the tobacco companies would have been too great to permit intervention at such a late date. Under the MSA, the State will not begin receiving payments until "State Specific Finality" is achieved. This occurs once the trial court approves the settlement and either (i) the time to appeal has run; or (ii) all appeals have been exhausted. Arizona must achieve State Specific Finality by December 31, 2001, or lose the $3.1 billion settlement. If the Counties were allowed to intervene, the State quite possibly would not receive payment until after it litigated the apportionment issue with each of them. Given today's legal culture, this would likely involve extensive discovery, motion practice, and possibly a trial, followed by multiple rounds of appeals. It would be expensive and time-consuming, to say the least. Further, the litigation could drag on past the December 31, 2001 deadline. In that case, the State would lose not only the monetary settlement, but also substantial injunctive relief that, it asserts without challenge, was far greater than could have been achieved without the tobacco companies' consent.

¶8 Having litigated this case for two and one-half years, the State would suffer an immense burden if it were required to delay receipt of the settlement funds until the apportionment claims of the Counties are resolved. It would also prejudice the tobacco companies to keep them in this litigation while the State and the Counties settled their disputes. On this record, the trial court was well within its discretion to deny the motion.

¶9 The Counties argue that they had no reason to intervene until after they reviewed the Master Settlement Agreement. They essentially contend that prior to such time, they did not know the Attorney General was not adequately representing their interests. We disagree. The day the Counties reviewed the MSA may have been when they first "realized that the end result of the protracted litigation would not be entirely to [their] liking." *Air California,* 799 F.2d at 538. However, they should have recognized long before then that intervention might be necessary.

¶10 In the first place, the Counties were not named as plaintiffs in this lawsuit. They

point to a single allegation in the State's 164–page complaint in which the Attorney General purported to bring the action on behalf of "all of the political subdivisions of the State." This language, they say, shows that the State advanced the action on their behalf. But as the Counties themselves repeatedly assert, the Attorney General never notified any of them, pursuant to A.R.S. § 41–192(A)(5), that the State was representing them. Without such notification, the Counties could not reasonably believe that they were being represented. Secondly, the State deleted the "political subdivisions" language from its First and Second Amended Complaints; it was not until a year later, when the Third Amended Complaint was filed, that the words reappeared. If the Counties were relying on that language, they should have seriously questioned whether the State was representing them during the year in which it was absent.

¶ 11 Other credible evidence suggests that the State did not represent the Counties. For example, after filing the lawsuit, then-Attorney General Grant Woods specifically urged certain Maricopa County Supervisors and the Maricopa County Attorney to consider filing their own actions against the tobacco companies. Woods indicated by affidavit that he never led county officials to believe the State was representing them, nor did they convey such a belief. In addition, attorney Steve Berman, Special Counsel for the State, said in a written declaration that he met with representatives of Maricopa County in 1997. At that meeting, Berman discussed the status of the State's case and explored the possibility of having his firm represent the County in an action against the tobacco companies. However, Berman never undertook any representation of the County as a result of that meeting. Given these facts, we think the Counties should have known—or at least suspected—that they were not being represented by the State and should have sought to intervene long before the consent decree and final judgment were entered. *See Air California,* 799 F.2d at 538 n. 1 (taking note of credible evidence in the record suggesting that the intervenor should have recognized that its interests were not being fully represented by the existing parties).

¶ 12 Moreover, the Counties obviously knew that they had not reached an agreement with the State regarding allocation of the settlement. It was common knowledge that negotiations for a global settlement were under way. Had the Counties wished to ensure that some portion of the proceeds would be apportioned and paid to them, thus bypassing the state treasury, they could have—and should have—moved to intervene before the settlement was fashioned and an initial distribution of proceeds was imminent. Thus, even if we agreed with the Counties' contention that the State represented them, their motion to intervene would still be untimely.

¶ 13 Assuming, *arguendo,* that the Counties had no reason to intervene until they saw the MSA, the trial court was still within its discretion to deny the motion. The Counties obtained a copy of the MSA on November 17, 1998. They then waited twenty-eight days to intervene. As noted earlier, the motion came fifteen days after the consent decree and final judgment were entered. Armed with actual knowledge that they risked losing hundreds of millions of dollars, it was "incumbent upon the [Counties] ... to take immediate[,] affirmative steps to protect their interests," *NAACP v. New York,* 413 U.S. 345, 367, 93 S.Ct. 2591, 2604, 37 L.Ed.2d 648 (1973), by filing a motion to intervene. *See Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1232 (1st Cir.1992) (stating that once a party has actual knowledge that his interests are not adequately represented by the existing parties, "the tempo of the count accelerates," and the party must intervene promptly to protect his rights).

¶ 14 Instead of intervening, however, county officials wrote to Governor Jane Dee Hull and Attorney General Grant Woods. On November 18, 1998, Janice Brewer, the Chairwoman of the Maricopa County Board of Supervisors, urged Hull and Woods by letter to discuss the issue of apportionment with the County "as soon as your schedules allow." Brewer acknowledged that "time is of the essence" and that "it may be necessary to file a Motion to Intervene in the litigation in

order to protect County taxpayer interests." The following day, Les Thompson, President of the County Supervisors Association of Arizona, wrote a similar letter to Hull, emphasizing the Counties' "strong belief" that they were entitled to part of the settlement proceeds. Thompson also asked to meet with Hull to discuss the issue "at your earliest convenience." The Governor's response to Brewer's letter on November 25th plainly indicated that the State had no intention of meeting with the Counties to discuss how the settlement funds would be divided. Hull said that she and the Attorney General had already announced their proposal for distributing the settlement funds to the Counties in the form of "health care block grants."

¶ 15 Thus, on November 25, 1998, it should have been absolutely clear to the Counties that intervention was necessary. Yet, they waited another three weeks to file their motion. If the Counties wished to safeguard their interests, swift, decisive action was in order. Their efforts in this case fell short of the mark. Under the circumstances, we cannot say that the trial court abused its discretion in denying the motion to intervene as untimely. *See NAACP,* 413 U.S. at 367, 93 S.Ct. at 2604 (motion to intervene filed four days after judgment, and eighteen days after intervenor had actual knowledge that intervention was necessary, was properly denied as untimely); *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir.1978) (motion to intervene filed seventeen days after entry of consent decree was properly denied as untimely).

¶ 16 The Counties make no claim that the amount of the settlement was inadequate or unreasonable. In fact, they agree that it was quite good. Because we find the timeliness question dispositive, we decline to reach the other issues raised by the Counties. Specifically, we take no position as to whether they are entitled to a share of the settlement proceeds. That issue is not before us. Furthermore, nothing we have said today prohibits the Counties from pursuing their claims in

another forum or action.[3] We merely hold that they may not intervene in *this* lawsuit. The judgment of the trial court is affirmed.

CONCURRING: STANLEY G. FELDMAN, Justice, and RUTH V. McGREGOR, Justice.

MARTONE, Justice, concurring.

¶ 17 I agree with the court that the trial court did not abuse its discretion in denying the motion to intervene as untimely. I write only to state that, even if the motion to intervene had been timely, it would have been denied on the merits. The Counties are not "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect [their] interest," within the meaning of Rule 24(a)(2), Ariz. R. Civ. P. The Counties were neither parties to this litigation nor parties to the Master Settlement Agreement. It is a fundamental tenet of American law that a nonparty is simply not bound by a judgment in an action to which it was not a party. The exceptions for class actions under Rule 23, Ariz. R. Civ. P., obviously do not apply here. Nor did the State purport to assert the Counties' claims within the meaning of A.R.S. § 41–192(A)(5), because the Attorney General did not notify the Counties in writing of his intention to bring any action on behalf of the Counties. Had he done so, the Counties would have been put on notice and would have had an opportunity to opt out.

¶ 18 Nor are the Counties bound by a release to which they are not parties. Despite persistent questioning at oral argument, the tobacco companies failed to state any basis for their claim that the Counties could be bound. The State conceded at oral argument that the Counties are not bound. The Counties are unaffected by the judgment or the Master Settlement Agreement. They are free to bring an action against the tobacco companies should they choose to do so. Any motion to dismiss based upon the State's

---

3. In fact, the Counties have filed a lawsuit against the State in Maricopa County Superior Court, *Apache County, et al. v. State of Arizona,* No. CV99–20533 (filed Nov. 16, 1999), in an attempt to secure a share of the settlement proceeds. The fact that the Counties are actively seeking relief in this separate action bolsters our conclusion that intervention here is simply unnecessary.

release should be denied. Thus, the Counties are simply not Rule 24(a) parties. Therefore, even if the motion to intervene had been timely, it would have been denied on the merits.

JONES, Vice Chief Justice, dissenting.

¶ 19 I respectfully dissent. In my view, the Counties of Arizona are entitled to intervene in this action as a matter of law. *See* Rule 24, Arizona Rules of Civil Procedure. The question is not whether permissive intervention should be allowed, but whether the Counties may intervene as a matter of right. The role of the Counties should be governed only by the "basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C.Cir.1972).

¶ 20 I would order the Counties' intervention solely on the question of apportionment of the fund between the Counties and the State. The court has discretion to allow such conditional or limited intervention as to specified issues. *See* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1922 at 505–07 (2d ed.1986); Deborah L. Rhode, Class Conflicts in Class Action, 34 STAN. L. REV. 1183, 1222 (1982). Conditional intervention would limit the Counties strictly to the matter of apportionment. Accordingly, the division and distribution of settlement proceeds between the State and the Counties would be properly accomplished by the application of law in a judicial proceeding as in the instant case, rather than by a partisan political action in the state legislature. As to the tobacco companies, the existing judgment would remain final. In this manner, State Specific Finality is accomplished, the tobacco companies suffer no prejudice, and the Counties are protected under the rule of law.

¶ 21 Under Rule 24(a)(2), Arizona Rules of Civil Procedure, intervention of right is required if the Counties have claimed an "interest relating to the property or transaction which is the subject of the action and [are] so situated that the disposition of the action may as a practical matter impair or impede

[their] ability to protect that interest, unless [that] interest is adequately represented by existing parties."

¶ 22 The Counties meet all requirements of Rule 24. In summary: (a) the Counties have defined a legitimate interest in the settlement fund based on the State's inclusion of county health care expenditures in the settlement formula reflected in the settlement agreement (the MSA), (b) the Counties' interest suffers actual impairment by reason of the MSA provision purporting to release County claims in favor of the tobacco companies, and (c) the State's representation of the Counties is rendered inadequate by the State's contradictory position, alleging on one hand that the action is brought against the tobacco companies on behalf of the "political subdivisions" of Arizona (*i.e.*, the Counties) and on the other, simply abandoning County interests without consent and with no guarantee of County participation in the settlement fund.

## TIMELINESS

¶ 23 The majority correctly states that timely application is a prerequisite for a motion to intervene. Timeliness, however, is not a mathematical calculation under Rule 24, but rather, is a flexible matter to be decided within the discretion of the trial court upon the proper application of law. *See Purvis v. Hartford Accident and Indem.*, 179 Ariz. 254, 257, 877 P.2d 827, 830 (App. 1994). While this Court may overturn a trial court's finding on the timeliness question only for abuse of discretion, the abuse standard is easily met where the lower court has misapplied the law. *See Brown v. Beck*, 64 Ariz. 299, 169 P.2d 855 (1946).

¶ 24 By finding the Counties' motion to intervene untimely, the trial court abused its discretion because it did not apply the appropriate legal standard. The rationale for its order consists entirely of one conclusory sentence: "[T]he cases cited by the Plaintiffs make it clear that this motion, coming after the settlement has been negotiated and approved, and, if granted, would cause delay, if not the unraveling of an historic settlement, is untimely." The court made no finding as

to when the Counties should have intervened to avoid this result. And the court ignored the law regarding timely intervention after judgment. It is an abuse to fail to consider the full test of timeliness. *See, e.g., Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1366 (11th Cir.1984). Arizona has ample case law by which to resolve the timeliness issue.

¶ 25 When a motion to intervene comes after judgment, it is granted in extraordinary and unusual circumstances. *See Weaver v. Synthes Ltd.,* 162 Ariz. 442, 446, 784 P.2d 268, 272 (App.1989). But the timeliness test is case specific, *see Winner Enterprises, Ltd. v. Superior Court,* 159 Ariz. 106, 109, 765 P.2d 116, 119 (App.1988), and the mere passage of time does not preclude intervention of right. *See United States v. Oregon,* 745 F.2d 550, 553 (9th Cir.1984).

¶ 26 This court has held that a "strong showing of entitlement and of justification for failure to request intervention sooner" would be enough to meet the extraordinary circumstances requirement and demand a resolution on the merits of the motion. *In re: One Cessna 206 Aircraft,* 118 Ariz. 399, 402, 577 P.2d 250, 253 (1978) (quoting *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113, 115–16 (8th Cir.1976)); *see also William Z. v. Arizona Dep't of Econ. Sec.,* 192 Ariz. 385, 965 P.2d 1224 (App.1998); *Salvatierra v. National Indem. Co.,* 133 Ariz. 16, 20, 648 P.2d 131, 135 (App.1982).

¶ 27 Moreover, it has been widely held that a motion to intervene at the conclusion of a case is timely if the proposed settlement or resolution creates the circumstances requiring the intervention. *See* 6 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 24.21[2](3d ed.1999) [hereinafter Moore's Federal Practice]. For example, in a case, as here, dealing with public law, the Pennsylvania Department of Public Welfare was entitled to intervene more than one year after settlement in a Medicaid recipient's malpractice action in order to assert a claim for medical benefits paid on behalf of the recipient. This was allowed, although the DPW had been aware of the litigation and took no part in it, where DPW intervened upon learning of the settlement. *See Miller v.*

*Lankenau Hosp.,* 152 Pa.Cmwlth. 266, 618 A.2d 1197, 1198–99 (1992).

¶ 28 In *Dangberg Holdings Nevada, L.L.C. v. Douglas County and Board of County Commissioners,* 978 P.2d 311 (Nev.1999), the Nevada Supreme Court held that the State and the estate of a ranch vendor's granddaughter could intervene after a settlement between the ranch purchaser and county, when the intervenors acted within two months of learning of the settlement agreement. The intervention would foster the principles of judicial economy and finality. *See id.* at 318–19; *see also U.S. v. Yonkers Bd. of Educ.,* 902 F.2d 213, 217 (2d Cir.1990) (city parks board's motion to intervene after a court order de-dedicating park land for use as a junior high was timely because board members could not have been aware that their interest in preserving the legislative process was threatened until the district court issued its order; motion was denied only because parks board's interest was adequately represented by existing parties); *Mundt v. Northwest Explorations, Inc.,* 947 P.2d 827, 830 (Alaska 1997) (intervention of grantee in landowner's post-judgment motion to quiet title was timely although grantee did not intervene until after the final judgment because it was unclear whether grantee knew her parcels of land would be affected by the motion until after trial court issued its order); *Shlensky v. South Parkway Bldg. Corp.,* 44 Ill.App.2d 135, 194 N.E.2d 35, 39–40 (1963) (intervention after final settlement was held timely where it was not until after remand of stockholders' derivative suit that it became apparent plaintiffs began acting in their own interests rather than in the interests of the corporation); *Stanford Assocs. v. Board of Assessors of Town of Niskayuna,* 39 A.D.2d 800, 332 N.Y.S.2d 286, 288 (N.Y. 1972) (school district entitled to late-stage intervention in proceeding to review property tax assessment on shopping center where, though motion came after settlement reducing property tax, motion was made promptly after district learned of order); *Blackburn v. Hamoudi,* 29 Ohio App.3d 350, 505 N.E.2d 1010, 1013–14 (1986) (although insurer, having paid uninsured/underinsured benefits, could have sought permissive intervention in its insureds' action against joint tortfeasors

earlier, it was not until settlement agreement was reached that insurer's intervention of right arose); *C.L. v. Edson,* 140 Wis.2d 168, 409 N.W.2d 417, 419–20 (App.1987) (newspaper's motion to intervene to open sealed documents in action which was settled more than nine months earlier was timely where newspaper moved to intervene promptly after original parties objected to stipulation to open records and where parties did not show prejudice resulting from having to defend post-judgment intervention).

¶ 29 The Counties allege their motion was timely, even though filed after settlement, because it was not until they had seen the MSA, just one month earlier, that they had reason to know County interests were impaired. The MSA purported to release the Counties' claims against the tobacco companies. The Counties learned this for the first time from the MSA. Whether or not the MSA *actually* released County interests does not affect the question of timeliness. The key factor is that knowledge of the contents of the MSA was the event that first made Counties aware of the release. By any proper standard, one month is not undue delay.

¶ 30 In addition to learning of the impairment of County interests, knowledge of inadequate representation by existing parties is also a prerequisite to intervention. But here, the Counties would have had neither the need nor the ability to intervene until it became clear that the attorney general was acting in the interests of the State alone and not its political subdivisions. Cases are legion holding that a party need not intervene until it becomes apparent that the intervenor's interests are inadequately represented by existing parties. *See, e.g., United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *Harris v. Pernsley,* 113 F.R.D. 615 (E.D.Pa.1986); *In re: City of Shawnee,* 236 Kan. 1, 687 P.2d 603, 612 (1984); *Weimer v. Ypparila,* 504 N.W.2d 333, 336 (S.D.1993).

¶ 31 The State's complaint itself demonstrates the soundness of the Counties' position on the timeliness issue: "The Attorney General ... brings this action on behalf of the state and all political subdivisions of the State...." This allegation gave the Coun-

ties cause to believe the attorney general was protecting their interests, and it was not until receipt of the MSA that the Counties were alerted to the problem. Their claims were purportedly released with no guaranteed share of settlement proceeds, even though massive County health care expenditures had been included in the calculation of Arizona's share of the settlement.

¶ 32 For these reasons, knowledge of the MSA, purporting to release the claims of "political subdivisions," should mark the moment from which the timeliness issue should have been measured. It is thus quite immaterial that the Counties knew before that date that the State of Arizona had sued big tobacco. "A court cannot impute knowledge that a person's interests are at stake from mere knowledge that an action is pending, 'without appreciation of the potential adverse effect an adjudication of that action might have on one's interests....'" *Howard v. McLucas,* 782 F.2d 956, 959 (11th Cir.1986) (quoting *United States v. Jefferson County,* 720 F.2d 1511, 1516 (11th Cir.1983); *see also United States v. City of Niagara Falls,* 103 F.R.D. 164 (W.D.N.Y.1984)).

¶ 33 This court has also held itself bound to accept as true the factual allegations in a party's motion to intervene. *See Saunders v. Superior Court,* 109 Ariz. 424, 425, 510 P.2d 740, 741 (1973); *Twitchell v. Home Owners' Loan Corp.,* 59 Ariz. 22, 28, 122 P.2d 210, 212 (1942). Thus, it was not until November 17, 1998, when, on its own initiative, Maricopa County purchased a copy of the MSA from the publishing company and received it by facsimile, that the County learned of the release of county claims and of the absence of State representation of County interests.

¶ 34 The State makes nothing but conclusory assertions and can point to no part of the record that demonstrates the Counties knew the content of the MSA before that date. A persistent drumbeat of settlement potential since 1997 is not enough, when the State can produce no proof that the Counties had prior knowledge that their interests were in jeopardy.

¶ 35 Finally, prejudice either to the State or the tobacco companies would not be impli-

cated by late-stage intervention because the Counties have made it clear their challenge pertains only to the apportionment of Arizona's share of the settlement proceeds. State Specific Finality as to the judgment against the tobacco companies would remain secure because late-stage interventions challenging not the final judgment, but merely asserting rights to moneys to be distributed thereunder, have been viewed favorably by courts and could easily be so viewed in the instant action. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967); *Knight v. Wacaser,* 317 Ill.App. 162, 46 N.E.2d 176, 179 (1942); *Breazeale v. Casteel,* 4 S.W.3d 434, 436–37 (Tex.App.1999).

¶ 36 The circumstances surrounding the MSA are extraordinary, easily sufficient to justify the sought after late-stage intervention. And the policy considerations militating against a finding of timeliness simply are not present.

## THE MERITS

¶ 37 Because the trial court found the motion untimely, it made no findings of fact on the merits. This court should have undertaken a *de novo* review of whether the Counties established a right to intervene under the substantive requirements of Rule 24. *See Purvis,* 179 Ariz. at 257–58, 877 P.2d at 830–31. Suffice it to say that if the Counties' factual allegations, which we accept as true, compel the legal conclusion that Counties had an interest in the litigation which was impaired by judicial disposition in their absence, and that such interest was not adequately represented by existing parties, the right to intervene is established, and we would have no alternative but to order the intervention. Intervention of right must be assessed solely with regard to the rights of the Counties. *See* 6 MOORE'S FEDERAL PRACTICE § 24.03[1][c] ("Considerations regarding prejudice to original parties are not incorporated in the Rule 24(a) criteria. The chief focus of Rule 24(a) is upon the applicant.")

¶ 38 The test for intervention first requires a finding that an "interest" exists. An interest is established where, as here, "an action involves a dispute about a particular property or fund, and an applicant claims a direct, substantial, and legally protectable right to this property or fund...." 6 MOORE'S FEDERAL PRACTICE § 24.03[2][a]. Because the Counties challenge the allocation of a settlement fund that was indisputably based on expenditures made and damages suffered by the Counties, they possess the requisite legal interest.

¶ 39 The test also requires a finding of "impairment." The Counties' interests were impaired by the release provision of the MSA. Until a court actually determines that the release may not be enforced against the Counties—an issue not ripe for decision or direction by this court—all County interests remain clearly vulnerable and thus impaired. Impairment of County interests is evidenced by gross inconsistency in the State's position, as noted, where the State, in the MSA, purported to release those interests, and in the proceeding before us, after asserting representation of the Counties, abandoned the same interests, leaving Counties to pursue the matter on their own, either in the legislature or in a separate action. Impairment of this magnitude is easily discernable.

¶ 40 Finally, because the Counties have an interest in the litigation and that interest is demonstrably impaired by the MSA, the question remaining is whether the State has adequately represented the Counties. The applicant has the burden of proving inadequate representation, but that burden is minimal. In the instant case, the State's contradictory position on substantive issues under Rule 24 sends the clear message that while the State itself was well represented, the Counties were not. In fact, they were completely left out. They had no participation in the suit or the settlement. The State purported to represent them and then released their interests to the tobacco companies. The burden on the applicant requires only a showing that the representation *may be* inadequate. The applicant is viewed as the best judge of whether existing parties represent his interest. Clearly, in the case at bar, no party filled that role. *See Linton ex rel. Arnold v. Commissioner of Health and Env't,* 973 F.2d 1311, 1319–20 (6th Cir.1992); *Saunders,* 109 Ariz. at 425–26, 510 P.2d at

741–42 (city police and firefighters allowed to intervene where the attorney general represented the named officials in the action but was found not to protect their interests); *see also Mille Lacs Band of Chippewa Indians v. Minnesota,* 989 F.2d 994, 999–1000 (8th Cir.1992).

¶ 41 In my view, all elements of Rule 24 intervention of right—"interest," "impairment," and "inadequate representation"—are fully established on this record. The sensible solution would be to remand the case to the trial court, ordering that the Counties be allowed to intervene as a matter of right under Rule 24, but limiting the issue to the matter of apportionment of the settlement fund. The judgment against the tobacco companies should remain undisturbed, thus achieving desired finality as to the tobacco companies. The sole question for determination would be the apportionment of funds between the Counties and the State.

¶ 42 I point out that while the difference between my approach and that of the majority is narrow, it is of critical importance. The majority would give Counties the option to file a separate action against the State to resolve the apportionment question, whereas I would order intervention as a matter of right in the instant action. This would achieve appropriate and comprehensive resolution of the case before us without the delay and expense of a new action. My approach has the further benefit of fully eliminating the risk that possible defenses—including, among others, the statute of limitations—that are unrelated to the merits of County claims and unavailable to the State and the tobacco companies in the instant case, may be assertable against the Counties in a separate action. My approach is not only preferable, but is required by law and would more quickly and completely resolve this entire controversy.