703 P.2d 527

**Helena E. SNYDER, John H. Stoffel, Lois T. Leonard, and Michael D. Hogan, Plaintiffs/Appellants,**

**v.**

**Sam LENA, E. S. Walker, David Yetman, Katie Dusenberry, and Conrad Joyner, members of the Pima County Board of Supervisors, and Pima County, a Body Politic, and John Kai and Mamie Kai, Robert N. Hillock, Wanda Dannenfelser, Cynthia Donald, John Miller and the City of Tucson, Defendants/Appellees.**

**No. 2 CA–CIV 5216.**

Court of Appeals of Arizona, Division Two, Department A.

April 1, 1985.

Review Denied June 4, 1985.

J.  Michael Tully, Tucson, for plaintiffs/appellants.

Rose Silver, Sp. Counsel to Pima County Bd. of Supervisors, Tucson, for defendants/appellees Pima County Bd. of Supervisors.

Jones, Dickerman, Nuckolls, Edwards & Smith, P.C. by Harold L. Higgins, Jr., Tucson, for defendants/appellees Pima County and City of Tucson.

Robert C. Stubbs & Associates, P.C. by G. Lawrence Schubart, Tucson, for defendants/appellees Kai, Hillock, Dannenfelser, Donald and Miller.

Frederick S. Dean, Tucson City Atty. by Thomas J. Wilson, Tucson, for defendants/appellees City of Tucson.

OPINION

FERNANDEZ, Judge.

This is an appeal from a judgment in a special action seeking an order directing the Pima County Board of Supervisors to schedule an election on the proposed incorporation of an area northwest of Tucson designated Tortolita by the proposed incorporators. Summary judgment motions were filed by the proposed incorporators, by Pima County and the City of Tucson which had been granted leave to intervene in the action, and by several individuals who are property owners and registered voters in the area who had also been granted leave to intervene. The trial court granted the motion of the county, city and individual intervenors, and this appeal followed.

On December 15, 1982, the proposed incorporators filed a copy of the petition for incorporation with the Pima County Division of Elections pursuant to A.R.S. § 9-101(C) and began obtaining signatures on their petition. On December 20, 1982, the City of Tucson adopted an annexation ordinance, effective immediately, that brought the city and the proposed town of Tortolita within six miles of each other. On June 13, 1983, the signed petition for incorporation was filed with the county elections division. The board met on July 5, 1983, and, upon advice of legal counsel, determined it had no jurisdiction to act upon the petition be-

cause the petition did not include a resolution from the City of Tucson as required by A.R.S. § 9-101.01(B)(1). It is undisputed that no resolution of the City of Tucson approving the proposed incorporation was attached to the petition. Suit was filed shortly thereafter.

The question presented to us is whether the Pima County Board of Supervisors was correct in its determination that it had no jurisdiction to order an election on incorporation because no resolution from the City of Tucson approving the proposed incorporation was attached to the petition. We find the board of supervisors was correct in its determination, and the trial court correctly granted summary judgment in favor of appellees.

The determination of this issue rests upon the interpretation of two statutes, A.R.S. §§ 9-101 and 9-101.01. Section 9-101 provides two alternative methods of incorporating a city or town in this state. The method by which appellants attempted to achieve incorporation of Tortolita in this case was that prescribed in § 9-101(B). That subsection states that the county board of supervisors shall call an election on incorporation

"[w]hen ten per cent of the qualified electors residing in a community containing a population of fifteen hundred or more petition the board of supervisors in the manner prescribed ...."

Subsection C of § 9-101, which was added in 1979, requires a copy of the petition to be filed prior to the obtaining of any signatures and gives proposed incorporators 180 days from the date the copy is filed for the required number of signatures to be obtained and the signed petition to be filed.

The critical statute in question here is A.R.S. § 9-101.01. In order that the reader may more easily understand the controversy, the full text of subsections A and B is set out as follows:

"A. Notwithstanding any other provisions of law to the contrary, all territory within six miles of an incorporated city

or town, as the same now exists or may hereafter be established, having a population of five thousand or more as shown by the most recent federal census, and all territory within three miles of any incorporated city or town, as the same now exists or may hereafter be established, having a population of less than five thousand as shown by the most recent federal census is declared to be an urbanized area.

B. No territory within an urbanized area shall hereafter be incorporated as a city or town, and the board of supervisors shall have no jurisdiction to take any action upon a petition to incorporate a city or town within such area, unless:

1. There is submitted with the petition for incorporation a resolution adopted by the city or town causing the urbanized area to exist approving the proposed incorporation; or

2. There is filed with the board of supervisors an affidavit stating that a proper and legal petition has been presented to the city or town causing the urbanized area to exist requesting annexation of the area proposed for incorporation and such petition has not been approved by a valid ordinance of annexation within one hundred twenty days of its presentation."

Appellants contend that the phrases in § 9–101.01(A) "having a population of five thousand or more" and "having a population of less than five thousand" modify the word "territory" which they in turn contend refers to the proposed incorporated area. The result of their interpretations would be that since Tortolita has a population of less than 5,000, the requirement for a resolution from an existing city under § 9–101.01(B)(1) would apply only if Tortolita and Tucson were within three miles of each other. Appellees' response is that the phrases modify the words "city or town"; thus, a resolution from the City of Tucson was required since the annexation ordinance of December 20, 1982, brought Tortolita within six miles of Tucson's boundary.

"The cardinal rule of statutory construction is to ascertain the meaning of the statute and intent of the legislature, . . . ." *City of Phoenix v. Superior Court, Maricopa County*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). If the phrases modify "territory" then an area with a population of 5,000 or more within six miles of a city or town would be subject to the requirements of subsection B if it wanted to incorporate. That would mean in turn that all areas, regardless of population, would also be subject to the requirements if they were within three miles of a city or town. That interpretation would render the phrase "having a population of less than five thousand" mere surplusage. In construing a statute, the court will favor that construction which gives meaning to every word and avoid that which makes some words idle and nugatory. *State Board of Technical Registration v. McDaniel*, 84 Ariz. 223, 326 P.2d 348 (1958); *Torrez v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 223, 635 P.2d 511 (App.1981).

It is obvious from a reading of § 9–101.01 that the intent of the legislature in enacting it was to grant some control to existing cities and towns with regard to proposed incorporations of areas close to their boundaries. The result of appellant's construction would be a proliferation of small towns within a short distance of large cities with attendant inefficient and uneconomical provision of government services. That does not appear to have been the intent of the legislature.

In addition, the rules of statutory construction support appellees' interpretation. A qualifying phrase is usually construed to apply to the word or phrase immediately preceding it if there is no indication of a contrary intention. 2A N. Singer, Sutherland Statutory Construction § 47.33 (Sands 4th ed. 1984). "City or town" is the noun phrase immediately preceding the clauses in question, and there is no evidence they are not intended to modify that phrase.

It should also be noted that the word "territory" cannot refer to the proposed

incorporated area since the word "community" is used in all other references to the proposed incorporated area in Article 1 of the chapter on formation of cities and towns. "Statutes are to be construed as a whole, and related provisions in pari materia are to be harmonized if possible, ...." *State v. Arizona Corporation Commission,* 94 Ariz. 107, 110–111, 382 P.2d 222, 224 (1963).

■ The proper reading of § 9–101.01(A), and the only sensible grammatical construction, is that an existing city with a population over 5,000 has authority to approve or disapprove incorporations within six miles of its boundaries, and an existing town of less than 5,000 has similar authority within three miles of its boundaries. This construction is consonant with the application of this section in another context in *Jay v. Kreigh,* 110 Ariz. 299, 518 P.2d 122 (1974). The supreme court there discussed the effect of the passage of an annexation ordinance on a pending incorporation petition since it brought the proposed town of Oro Valley within six miles of the City of Tucson. The court noted without discussion that the applicable limit in the case was six miles.

■ Pursuant to that statutory construction then, § 9–101.01(B) requires a resolution of approval from the City of Tucson before the Pima County Board of Supervisors has jurisdiction to act upon the incorporation petition since the City of Tucson and the proposed town of Tortolita are within six miles of each other. The board had no jurisdiction to act in this instance without that approval.

Appellants contend, however, that, even if the applicable limit is six miles, the initial filing of a copy of the incorporation petition served to set the boundary of the urbanized area so that the after-filed annexation ordinance had no effect on the proposed incorporation. They assert the "first in time" rule of *Jay v. Kreigh,* 110 Ariz. 299, 518 P.2d 122 (1974), is applicable to this situation. In that case the supreme court held that an incorporation petition upon which suit had been filed took precedence over a later-filed annexation ordinance covering a different area but affecting the six-mile limit of § 9–101.01 because the incorporation proceedings had not yet been fully determined. The first in time principle applies to the first body to obtain jurisdiction of its respective proceedings.

Appellants argue that the initial filing of the unsigned petition is the first procedural step required by statute so it confers primary jurisdiction upon the board of supervisors. There is no merit to this argument.

Although A.R.S. § 9–101(C) requires the filing of the unsigned petition as the first step, it is clear the filing is required solely to begin the 180-day period for the obtaining of signatures. The second step in the process may never be taken. The purpose of subsection C was neither to confer jurisdiction upon the board of supervisors nor to fix the boundaries of an existing city or town for the purposes of an attempted incorporation. It is obvious the action that confers jurisdiction upon the board of supervisors is the filing of a signed petition that meets all statutory requirements of either § 9–101 or of both §§ 9–101 and 9–101.01. Section 9–101.01(B) states the board has no jurisdiction to take any action on a petition unless the required resolution or affidavit is attached to the petition. That subsection would be meaningless if the initial filing had already conferred jurisdiction upon the board. This construction is consistent with the fact that the subsection in § 9–101.01 requiring a resolution or affidavit in order for the board to have jurisdiction was enacted in 1961, but the subsection in § 9–101 requiring an unsigned copy of the petition to be filed first was not added until 1979. The signed petition filing is clearly the only one that confers jursdiction.

Having determined that the board of supervisors had no jurisdiction to act upon the incorporation petition, we need not reach the other issues raised on appeal. Judgment for appellees affirmed.

BIRDSALL, P.J., and HOWARD, J. concur.