877 P.2d 827

**Dawn Raye PURVIS, surviving spouse of Glenn A. Purvis, on her own behalf and on behalf of Ashley Purvis, a minor and Golden and Freida Purvis, Plaintiffs–Appellants,**

**and**

**The Tanner Companies, an Arizona corporation, Defendants–Appellants,**

**v.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Intervenor–Appellee.**

**No. 1 CA–CV 91–0511.**

Court of Appeals of Arizona, Division 1, Department A.

April 12, 1994.

Reconsideration Denied June 6, 1994.

Jennings, Strouss & Salmon by James M. Ackerman and J. Matthew Powell, Phoenix, for appellants.

Snell & Wilmer by Steven S. Guy, Phoenix, for intervenor-appellee.

## OPINION

GRANT, Judge.

The sole issue in this appeal is whether the trial court committed prejudicial error in

granting Hartford Accident and Indemnity Company's ("Hartford's") motion to intervene. The appellants ("Purvis" and "Tanner"), were the plaintiff and defendant in the wrongful death suit filed in the trial court. They entered into a *Damron*[1]-type agreement which was approved by the trial court. They now seek to have this court set aside the damage award entered on jury verdicts in the subsequent trial on damages in which Hartford was granted leave to intervene. We find appellants' argument to be without merit and affirm the judgment entered by the trial court.

## FACTS

In 1986, Tanner was the general contractor on a road construction project. Another company, Safety Engineering & Supply Co. ("Safety Engineering") was the striping subcontractor on that project.

As part of the Tanner/Safety Engineering subcontract, Safety Engineering agreed that it would indemnify Tanner for any liability Tanner might incur in connection with Safety Engineering's work on the project. Under a separate provision in the subcontract, Safety Engineering also agreed to list Tanner as an additional insured on a comprehensive automobile insurance policy purchased by Safety Engineering. In accordance with that subcontract provision, Safety Engineering had Tanner named as an additional insured on an automobile insurance policy written by Hartford.

On June 6, 1988, a paving machine operated by a Tanner employee backed over and killed Glenn Purvis, an employee of Safety Engineering. The surviving members of Purvis's family filed this wrongful death action against Tanner on April 26, 1989. Counsel was retained to defend Tanner in this action. Though Tanner may not have known at the time the suit was filed that it was named as an insured on the Hartford policy, Tanner was undisputedly aware of this by January of 1990 at the latest.

From late 1989 through mid 1990 the various parties on the defense side of this law suit, Tanner, Safety Engineering, and Hart-

ford, had numerous meetings and telephone conversations and exchanged letters on how to proceed in this action. The legal effect of these "negotiations" between these parties is the subject of this appeal. The outcome of the "negotiations" was that neither Safety Engineering nor Hartford stepped forward to defend Tanner, the suit was not settled, and Tanner entered into a *Damron*-type agreement with Purvis.

Under the *Damron*-type agreement, the amount of damages was to be determined at trial. Hartford successfully intervened at this trial.

## DISCUSSION

The parties do not disagree about the law regarding an insurer's right to intervene in a wrongful death action in which the insured has entered into a *Damron*-type agreement with the plaintiffs. Their dispute is over whether the trial court properly applied the law to the facts presented in this case and what the proper standard of review for this court is.

### 1. Insurer's Right To Intervene

Rule 24(a), Arizona Rules of Civil Procedure, allows intervention as a matter of right upon a timely application "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." In *McGough v. Insurance Company of North America*, 143 Ariz. 26, 30–31, 691 P.2d 738, 742–43 (App. 1984), this court held that when an insured has entered into a *Damron*-type agreement, the insurer has a right to intervene pursuant to Rule 24(a). The court also acknowledged, though, that an insurer loses this right to intervene if the insurer has breached its contract by refusing to provide a defense for its insured. Quoting from *Manny v. Estate of Anderson*, 117 Ariz. 548, 550, 574 P.2d 36, 38 (App.1977), we said:

> If the insurer breaches its contract by refusing to defend, and the insured then

1. *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969).

retains counsel and protects himself, the insurer cannot later enter the case without the insured's permission (citations omitted).

*McGough,* 143 Ariz. at 31, 691 P.2d at 743. These same principles have been restated in the more recent cases of *Anderson v. Martinez,* 158 Ariz. 358, 762 P.2d 645 (App.1988), and *H.B.H. v. State Farm Fire and Casualty Co.,* 170 Ariz. 324, 823 P.2d 1332 (App.1991).

■ In *Holt v. Utica Mutual Insurance Co.,* 157 Ariz. 477, 482–83, 759 P.2d 623, 628–29 (1988), the Arizona Supreme Court held that "[e]ven absent an express refusal to defend, an unreasonable delay in taking action after receiving notice of a claim may constitute a breach of the duty to defend." However, before a refusal to defend may be found, it must be shown that the insurer received sufficient notice that the insured was tendering the defense to it. As this court said in *Litton Systems, Inc. v. Shaw's Sales and Service, Ltd.,* 119 Ariz. 10, 14, 579 P.2d 48, 52 (App.1978), a case in which demand to defend was being made on an indemnitor:

> The notice, whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable.

The Seventh Circuit explained as follows: "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Hartford Accident & Indemnity Co. v. Gulf Ins. Co.,* 776 F.2d 1380, 1383 (7th Cir.1985).

In this case, the trial court found that Tanner had tendered its defense to its indemnitor, Safety Engineering; but the trial court did not allow Safety Engineering to intervene because Safety Engineering had refused to defend. The trial court allowed Hartford to intervene because the court concluded Tanner had failed to meet the burden of proving "an unequivocal and explicit demand or tender by Tanner to Hartford to undertake the defense of the subject wrongful death action."

### 2. Standard of Review

The parties disagree as to which standard of review this court must apply in deciding the issue of whether a party had the right to intervene under Rule 24(a)(2). The appellants argue that because the trial court made its decision based solely on documentary evidence consisting of letters and affidavits, without holding an evidentiary hearing, this court should review the issue *de novo.* Appellants rely on cases such as *Perry Brothers v. Weinberg,* 105 Ariz. 406, 409, 466 P.2d 11, 14 (1970), and *Arizona Central Credit Union v. Holden,* 6 Ariz.App. 310, 311, 432 P.2d 276, 277 (1967) which hold that, when the trial court resolves fact issues based solely on documentary evidence, review is *de novo.*

■ Hartford argues that this court should not disturb the trial court's decision absent a finding of abuse of discretion. Hartford cites cases such as *Jackson v. PhoenixFlight Productions, Inc.,* 145 Ariz. 248, 700 P.2d 1348 (App.1984), *vacated on other grounds,* 145 Ariz. 242, 700 P.2d 1342 (1985), and *Salvatierra v. National Indemnity Co.,* 133 Ariz. 16, 20, 648 P.2d 131 (App.1982), which held that the granting of a motion to intervene is a matter within the sound discretion of the trial court. If a matter is within the trial court's discretion, this court will not reverse absent a finding of clear abuse of discretion. *Schwartz v. Farmers Ins. Co.,* 166 Ariz. 33, 800 P.2d 20 (App.1990).

■ In the cases Hartford cites, the issue being reviewed appears to be whether the motion to intervene was timely. However in this case the issue we are asked to review is whether Hartford had a *right* to intervene pursuant to Rule 24(a)(2). We believe that abuse of discretion is the correct standard to apply when reviewing the issue of timeliness of an application for intervention. When reviewing the issue of whether the applicant has established a *right* to intervene under the criteria of Rule 24(a)(2) we use the *de novo* standard. We recognize that there is a division of authority on which standard of review to apply to this issue.

*See* 3B James Wm. Moore, *et al., Moore's Federal Practice* ¶ 24.15 at 152–54 (2d ed. 1993). Supporting a *de novo* standard of review is the fact that the trial court's determination was based solely on documentary evidence consisting of letters and affidavits. In such a case the reviewing court may make its own analysis of such evidence. *Broemmer v. Abortion Serv. of Phoenix*, 173 Ariz. 148, 840 P.2d 1013 (1992).

### 3. Analysis

The pivotal question in this case is whether Tanner had tendered its defense to Hartford. If proper tender did not occur, then Hartford's inaction could not be considered a breach of the duty to defend. Absent a breach of the duty to defend, Hartford did not waive its right to intervene and the trial court's ruling allowing intervention was correct. The appellants argue that the trial court's finding is not supported by the evidence. The evidence consisted of a series of letters between the attorneys representing the parties and insurers and affidavits of these same attorneys. The appellants argue that the evidence shows that a tender of the defense to Hartford was in fact made, that Hartford's attorney should have realized it had been made, and that the failure to take over Tanner's defense should have caused Hartford to lose the right to intervene.

■ After reviewing the record in this case, we conclude that, under *de novo* review, the trial court acted properly in allowing Hartford to intervene in the trial on damages. We agree with the trial court that the evidence fails to show that there was "an unequivocal and explicit demand or tender by Tanner to Hartford to undertake the defense of the subject wrongful death action."

Tanner had several possible parties to whom it could tender its defense: its indemnitor, Safety Engineering; Safety Engineering's auto insurer, Hartford (whose policy named Tanner as an insured); or any other insurer of Tanner that had issued a policy potentially covering the accident. Hartford contends that before Hartford became aware of this suit, Tanner tendered the defense to another insurer who provided Tanner's general liability insurance and that insurer did

retain counsel for Tanner. The record is unclear on this point and we find it unnecessary to decide whether Tanner tendered the defense to that insurance company. What is significant is that by the time Hartford became aware of this suit Tanner was represented by counsel.

Appellants contend that letters written by counsel for Tanner in September of 1989 show a tender of the defense to Hartford. We disagree. The September 18th letter written to Safety Engineering does not evidence a tender of defense to anyone. The letter simply states that Tanner "will look to Safety Engineering and its insurers for full indemnity including costs and attorneys' fees" and suggests that Safety Engineering forward a copy to its insurers. The September 21st letter, again written to Safety Engineering, clearly shows Tanner tendered the defense to its indemnitor, Safety Engineering, but not to Safety's auto insurer, Hartford. Though Safety Engineering may have forwarded this request to its general liability insurer, there is no evidence that Safety Engineering forwarded the tender of defense to its auto insurer, Hartford. Instead, Safety Engineering's response to Tanner's request was to contest the validity of the indemnity clause in the subcontract, dispute liability, and refuse to defend Tanner.

In a June 26, 1990, letter to Hartford's attorney, Tanner revealed that it was considering entering into a *Damron*-type agreement with the plaintiff. Hartford responded with a letter dated June 29, 1990, explaining its position as follows: Hartford had never declined to provide coverage; Tanner had never tendered the defense to Hartford, and Tanner's entering into a *Damron*-type agreement with the plaintiffs would be in breach of the policy conditions.

Even though Hartford made its position absolutely clear before Tanner executed the *Damron*-type agreement, Tanner did not respond by immediately tendering an unequivocal, certain and explicit demand to Hartford to undertake Tanner's defense. Instead, Tanner's attorney, in two July 1990 letters, asserted that the letters written earlier show that Tanner's "tender of defense to Safety Engineering was obviously intended to go through them to their insurers." Tanner

executed the *Damron* -type agreement with the plaintiff on July 9, 1990.

In none of these letters does Tanner assert that it orally tendered its defense to Hartford. October of 1990 is the first time that the record shows that Tanner's attorney asserted that he had orally tendered the defense to Hartford during a meeting held the preceding January. By affidavits, Hartford's and Safety Engineering's attorneys who were present at the January, 1990 meeting deny that an oral tender to Hartford occurred. Although this may be how Tanner's attorney remembers the January meeting, the letters written between the attorneys at the time do not confirm that an oral tender was made. Additionally, in June, when Hartford made its position as to the *Damron* -type agreement known, Tanner's attorney did not assert that he had orally tendered the defense earlier in the year. On this record we agree with the trial court's finding that Tanner did not tender its defense to Hartford.

■ Moreover, we do not find that the intervention caused any prejudice to Purvis and Tanner. In order to justify reversal, the trial court error must be prejudicial to the substantial rights of the appealing party, and the prejudicial nature of the error will not be presumed but must affirmatively appear from the record. *Walters v. First Fed. Sav. & Loan Ass'n of Phoenix*, 131 Ariz. 321, 641 P.2d 235 (1982).

■ The appellants argue that Hartford's intervention in the lawsuit affected the outcome, and therefore that if the intervention was erroneous, it necessarily was prejudicial. Appellants rely on cases such as *Lorenz v. Valley Forge Insurance Company*, 815 F.2d 1095, 1099 (7th Cir.1987), and *Boy v. I.T.T. Grinnell Corporation*, 150 Ariz. 526, 532, 724 P.2d 612, 618 (App.1986), which hold that whenever a court allows improper evidence or testimony that might affect a jury verdict, prejudice is presumed and reversal is required.

Here, however, appellants have not shown that any of the evidence presented by Hartford was improper. In fact, appellants do not complain that anything Hartford did at trial was improper. Appellants' only complaint is that Hartford's participation in the trial made their burden of persuading the jury to grant the amount of damages they wanted in order to satisfy the *Damron* -type agreement more difficult.

■ This court has said that prejudice will not be presumed but must be evident from the record. *Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 487, 851 P.2d 109, 112 (App.1992). However, prejudice is conclusively presumed where the nature of the error deprives a litigant of an essential right. *Perkins v. Komarnyckyj*, 172 Ariz. 115, 119, 834 P.2d 1260, 1264 (1992). Appellants have not claimed that they were deprived of *any* essential right. A miscarriage of justice cannot be said to have occurred when the appellants merely complain that they were put to a more difficult task of justifying to the jury the fairness of their requested damages.

For the reasons explained in this opinion, the judgment of the trial court is affirmed.

GERBER, P.J., and JOHN FOREMAN, J., concur.

NOTE: The Honorable John Foreman, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Article VI, Section 3 of the Arizona Constitution.